GOODMAN TOYOTA, INC. v. CITY OF RALEIGH

No. 8210SC366

(Filed 6 September 1983)

1. **Municipal Corporations § 30.13— sign control ordinance—prohibiting use of windblown signs—valid exercise of police power**

    A city sign control ordinance, including provisions preventing the use of blimps and other windblown signs except under specified circumstances, constitutes a valid exercise of the city's police power and does not violate the due process rights of an automobile dealer who has been using a blimp for advertising purposes.

2. **Municipal Corporations § 30.18— sign control ordinance—amortization period for nonconforming signs—equal protection**

    The 90-day period provided by a city sign control ordinance for the amortization of nonconforming windblown and portable signs bears a reasonable relationship to the legitimate purposes of the ordinance and does not violate the equal protection rights of an automobile dealer who has been using a blimp for advertising purposes.

3. **Municipal Corporations § 30.13— sign control ordinance—temporary permits for "special events"—due process**

    A provision of a city sign control ordinance allowing temporary permits to be issued for windblown signs only for "special events" and defining "special events" was not so vague as to violate due process.

APPEAL by plaintiff from *Brannon, Judge.* Judgment entered 20 November 1981, amended 1 December 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 15 February 1983.

This appeal concerns the validity and enforcement of portions of Raleigh Sign Control Ordinance Number 982TC96.

*Blanchard, Tucker, Twiggs, Denson & Earls, P.A., by Charles F. Blanchard and Douglas B. Abrams, for plaintiff appellant.*

*City Attorney Thomas A. McCormick, Jr., by Ira J. Botvinick, Associate City Attorney, for defendant appellee.*

BECTON, Judge.

I

Plaintiff, Goodman Toyota (Goodman), is a large automobile dealership located adjacent to a major Raleigh, North Carolina thoroughfare. In addition to its several stationary, on-premises identification signs, Goodman has, since 1977, owned and displayed a white fabric balloon or blimp. The blimp is approximately fourteen feet long, weighs thirty pounds in its unfilled state, and is filled with helium when displayed. It has the words "Goodman Toyota" printed in large red letters on both sides, and is displayed during sales and at other events at the end of a long rope attached to one of plaintiff's buildings.

The ordinance at issue, Number 982TC96, was enacted by defendant City of Raleigh (City) on 2 January 1979 and became effective on 31 January 1979. On 2 May 1979, Goodman filed suit against the City challenging the ordinance on statutory and constitutional grounds. Because that ordinance prohibited Goodman from using its blimp, and because "serious questions under . . . the [City] ordinances . . . state and federal law and . . . the state and federal constitutions [were raised] as to the legality of the ordinance . . .", Goodman also moved for, and Judge James H. Pou Bailey entered, an order in May of 1979, restraining the City from interfering with Goodman's use of its blimp until a hearing on the merits could be held. The City appealed from that order, and ultimately our Supreme Court affirmed by reversing the order of this Court that reversed Judge Bailey's order. *See, Goodman Toyota v. City of Raleigh,* 47 N.C. App. 628, 267 S.E. 2d 714, *rev'd,* 301 N.C. 84, 277 S.E. 2d 690 (1980). In the interim, Goodman amended its Complaint, and the City filed an Answer in response.

Ordinance 982TC96 was amended by ordinance number 448TC128, passed on 2 September 1980. The amended ordinance includes an additional type of sign within its restrictions: "Windblown signs." Ordinance number 448TC128 defines "windblown signs" as "any banner, flag, pennant, spinner, streamer, moored blimp or gas balloon," and provides that the once unlimited display thereof is now prohibited, in the absence of a temporary sign permit. A sign permit allows a user a maximum of 30 days to maintain his sign.

The ordinance also provides that temporary permits can properly be issued only for "special events": "Any activity or circumstance of a business or organization which is not part of its daily activities. [Those] include, without limitation, grand openings, closeout sales . . . and fund raising membership drives or events of civic, philanthropic, educational or religious organizations."

A trial on the merits was held before Superior Court Judge Anthony Brannon beginning 17 December 1980. Evidence was presented by both parties. At the conclusion of the evidence the trial judge made extensive factual findings and legal conclusions, and adjudged, *inter alia,* that: Ordinance Number 982TC986 and all subsequent amendments thereto are constitutional; Goodman was to conform to the ordinance, cease all violations thereof, and comply with a Permanent Prohibitory Injunction and Order of Abatement issued pursuant to statute; the preliminary restraining order issued in 1979 was dissolved; and the plaintiff's action was dismissed with prejudice.

Later, on Goodman's motion, the trial court amended its judgment to include an injunction restraining the City from enforcing the ordinance concerning use of the blimp during any *bona fide* sales event during the pending appeal.

## II

Goodman brings forth forty assignments of error and makes five arguments on appeal. The City brings forth four cross-assignments of error and makes one argument on its cross appeal. We will first address Goodman's contentions.

[1]   Goodman first argues that the Sign Control Ordinance, as it relates to blimps and other windblown signs, is arbitrary and capricious and thus violates due process as guaranteed by the United States and North Carolina Constitutions because it represents an illegitimate use of the police power and bears no reasonable or substantial relationship to the health, safety, or welfare of the public. Goodman further argues that while the ordinance has as its stated purposes the promotion of traffic safety and fire protection, it cannot reasonably facilitate the achievement of those purposes.

The general rule is that zoning regulations, like all forms of regulations pursuant to the police power, must pass a two-pronged test in order to comply with substantive due process. First, the regulation must be designed to achieve objectives within the scope of the police power. Second, it must seek to achieve those objectives by reasonable means. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 71 L.Ed. 303, 47 S.Ct. 114 (1926). Whether the means are reasonable depends on their promotion of the public good and their reasonably minimal interference with the property owner's right to use his property as he deems appropriate. *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 214, 258 S.E. 2d 444, 449 (1979).

Applying those rules in the case *sub judice* and assuming, as Goodman asserts, that the challenged ordinance has, as its primary goal, the control of community appearance, we nevertheless reject Goodman's contention that aesthetics-based regulations are invalid *per se.* As our Supreme Court held in *State v. Jones*, 305 N.C. 520, 530-31, 290 S.E. 2d 675, 681 (1982): "[R]egulation based on aesthetic considerations may constitute a valid basis for the exercise of the police power depending on the facts and circumstances of each case." *A fortiori*, when other worthwhile objectives are also realized, for example, improvement of traffic safety and the protection of property values, the challenged regulation will be deemed to be within the scope of permissible purposes properly achieved through use of the police power. *State v. Jones* supports our finding that an ordinance is a reasonable use of the police power if the aesthetic purpose to which the regulation is related outweighs the burdens imposed on the private property owner. Since: (i) the trial court found that Goodman failed to introduce any evidence which revealed a correlation between sales and the display of the blimp; (ii) Goodman does not dispute that finding; and (iii) there was a basis for that finding of the trial court, we hold that the burden, if any, imposed on Goodman by restrictions on its use of the blimp are negligible. Consequently, the benefits derived from the objectives achieved by the statute outweigh any burdens imposed upon Goodman, and the enactment and enforcement of this ordinance, despite its emphasis on aesthetic values, are properly within the City's police power. That aesthetic considerations are key to efficacious zoning regulations should be obvious. Indeed, as one poet observed, tongue not so firmly in cheek:

I think that I shall never see
A billboard lovely as a tree.
Indeed, unless the billboards fall,
I'll never see a tree at all.

Ogden Nash, *quoted in Metromedia Inc. v. City of San Diego,* 23 Cal. 3d 762, 592 P. 2d 728, 748, 154 Cal. Rptr. 212, 232 (1979), *reversed,* 26 Cal. 3d 848, 610 P. 2d 407, 164 Cal. Rptr. 510 (1980).

Having determined that the ordinance was enacted to achieve legitimate purposes, we must next determine whether it achieves those purposes by reasonable means or, as the test is sometimes stated, whether the ordinance bears a substantial relationship to the purposes it is designed to achieve. It is important to note that any exercise by a municipality of its police power is presumed valid, and when the reasonableness of an ordinance is debatable, judicial discretion gives way to legislative judgment. Consequently, the party challenging the regulation has the burden of showing its unreasonableness. *State v. Joyner,* 286 N.C. 366, 211 S.E. 2d 320, *appeal dismissed,* 422 U.S. 1002, 45 L.Ed. 2d 666, 95 S.Ct. 2618 (1975). It has even been said that a municipality need ensure only that several plausible grounds for the ordinance are stated therein and that the ordinance arguably accomplish a public good and avoid excessive limitations of property interests. *See, e.g.,* Note, *Zoning—Stronger Than Dirt: Aesthetics-Based Municipal Regulations May Be a Proper Exercise of the Police Power,* 18 Wake Forest L. Rev. 1167 (1982). Although we express no opinion as to the wisdom of that sentiment, we nevertheless summarily rule that an ordinance which limits the number of signs in a municipality and prevents the use of temporary and windblown signs except under certain specified circumstances is reasonable, and effects little interference, if any, to the business operations of Raleigh area merchants.

For the foregoing reasons, we reject Goodman's first assignment.

IV

[2] Goodman next attacks the ordinance on equal protection grounds, contending that (i) the ninety (90) day period provided for the amortization of non-conforming on-premises windblown and portable signs, is unreasonably short; (ii) the ninety (90) day

provision invidiously discriminates between temporary and permanent on-premises signs; and (iii) the ninety (90) day period creates an unfair distinction between on-premises and off-premises signs.

Generally, when, as here, a governmental act classifies persons or entities in a manner that does not involve a suspect class or fundamental right,[1] equal protection requirements are not violated so long as the classification bears some rational relationship to a conceivable, legitimate public interest. *Texfi Industries, Inc. v. City of Fayetteville*, 301 N.C. 1, 269 S.E. 2d 142 (1980). Because we have already found that the ordinance is designed to achieve legitimate public interests and because amortization requirements are presumed valid if reasonable, *State v. Joyner*, 286 N.C. 366, 211 S.E. 2d 320 (1975), we now determine if the distinction recognized in the ordinance bears a rational relationship to the achievement of those ends.

An amortization provision in a zoning regulation represents a tacit recognition that owners of properties that do not comply with the subsequent law cannot immediately conform to the change without great personal and economic hardship. An amortization period allows those owners time to recoup the losses inherent in compliance changes while at the same time permitting the governing body to achieve the purposes of the enactment. Further, ninety (90) days is sufficient, in our view, to permit Goodman to cease using its blimp. That conclusion is bolstered by the facts that (i) Goodman took the sign down each day as a matter of course and thus cannot now be heard to say that removal imposes an extra hardship on its operations, and that (ii) Goodman has actually had the four (4) years since the inception of this action, because of the injunction against the City, to bring its on-premises signs into compliance with the ordinance. The actual costs to Goodman to remove the blimp is minimal.[2]

The answer, then, to the question whether the amoritzation provision of the ordinance bears a reasonable relationship to the

1. Goodman does not assert that the ordinance infringes upon one of its fundamental rights or involves a suspect classification.

2. Goodman failed to produce evidence that the absence of the blimp adversely affected its sales in any way.

legitimate ends of controlling sign proliferation, reducing the confusion caused by that proliferation, and limiting distractions to motorists within the city in a manner likely to wreak the least havoc on affected landowners, is yes. We therefore reject Goodman's second argument and hold that the challenged ordinance passes constitutional scrutiny on equal protection grounds.

V

(98) *Special event.* Any activity or circumstance of a business or organization which is not part of its daily activities. Such activities may include, without limitation, grand openings, closeout sales (pursuant to Article 17 of Chapter 66 of the General Statutes), and fund raising membership drives or events of civic, philanthropic, educational, or religious organizations.

[3] Goodman contends that the above quoted section of the ordinance is so vague that it is constitutionally void. An enactment is void so as to violate Due Process requirements if it either forbids or requires the doing of acts with such imprecision that persons of common intelligence must guess at its meaning. *State v. Vestal,* 281 N.C. 517, 189 S.E. 2d 152 (1972). The requirements of this section of the ordinance are clear enough to permit those affected by it to know that they are so situated. *State v. Dorsett,* 3 N.C. App. 331, 164 S.E. 2d 607 (1968). We therefore find this argument to be without merit. Because of our resolution of this portion of Goodman's appeal, we need not address its fourth argument.

VI

By its assignments of error one (1), ten (10), fourteen (14), and fifteen (15), Goodman contends that the evidence adduced at trial was insufficient to support certain of the trial court's factual findings. In view of the foregoing discussion, we conclude that error in the findings, if any, was harmless.

VII

We accordingly affirm the judgment of the trial court. Because of our disposition of Goodman's appeal, we need not discuss the City's cross assignments of error.

Affirmed.

Judges ARNOLD and PHILLIPS concur.